## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN  DIVISION

| | | |
|---|---|---|
| **KIMBERLY DENSON**, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | **CV-07-BE-1916-E** |
| **HONDA MANUFACTURING OF** | ] | |
| **ALABAMA, LLC,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |
| | ] | |

### MEMORANDUM OPINION

This matter is before the court on "Defendant Honda Manufacturing of Alabama, LLC's Motion for Summary Judgment" (doc. 20), in which Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's claims for interference and retaliatory termination of her employment under the Family and Medical Leave Act ("FMLA").  For the reasons stated in this memorandum opinion, the court will DENY Defendant's motion for summary judgment on the FMLA interference claim and GRANT Defendant's motion for summary judgment on the FMLA retaliation claim.

### I.  FACTS

Viewed in the light most favorable to the Plaintiff (*see Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007)), the following facts are material to the resolution of the instant motion.

Plaintiff, Kimberly Denson, worked for Defendant Honda Manufacturing of Alabama, LLC ("HMA") at its Lincoln, Alabama plant beginning on September 17, 2001 and continuing

1

until her discharge on March 13, 2007.   HMA maintains a no-fault attendance policy.

Associates receive points for absences without regard to whether the absence is excused or

unexcused, unless the absence is covered by approved leave, including FMLA, or paid time off.

Generally, associates accumulating three to five points receive a written warning; associates

accumulating six to eight points receive a level one written counseling; associates accumulating

nine to eleven points receive a level two written counseling; and associates are subject to

termination for accumulating twelve or more points.  Denson understood that HMA maintained a

point system for attendance and that the accumulation of twelve points could subject her to

termination.

In March of 2007, HMA terminated Denson for accumulating twelve or more attendance

points.  Denson admits that she had accumulated six points before September 19, 2006 and

further, that she properly received one point on November 3, 2006 and two more points on

February 28, 2007.  The dispute between the parties does not involve the assessment of these

nine points but rather, the four points that she received for her absences during the period of

September 19-22, 2006.  Denson claims that her absences during this period should have been

covered by FMLA leave, and HMA insists that they were not covered.  The parties agree that if

the FMLA leave had been allowed, then she would not have accumulated twelve or more points

and she would not have been terminated.

As the FMLA requires, HMA provides up to twelve weeks of leave under the FMLA to

eligible associates with a serious health condition or associates who are needed to care for a

parent, child, or spouse with a serious health condition.  When associates request FMLA leave,

HMA requires submission of a medical certification within 21 days of the request.  HMA uses a

third-party, Aetna, Inc.[1] to administer FMLA leave.  Aetna makes the eligibility determinations

for HMA associates, and HMA provides associates with FMLA request forms and handles

questions that arise during the FMLA process.

Plaintiff had previously used the FMLA leave for surgery in March 2005, and understood

the general process; she understood that she was ultimately responsible for submitting her FMLA

paperwork by HMA's deadline and understood that her healthcare provider must submit a

medical certification within 21 days of her request for leave.  HMA's Associate Handbook states,

"If an associate fails to submit the medical certification form as required by HMA, the

commencement of FMLA leave may be delayed until the form is submitted."  Denson signed a

document on January 26, 2006 entitled "Leave of Absence Process - Summary of Associate

Responsibilities" that includes the following statements: "**It is your responsibility – not your

doctor's – to ensure that [Aetna] has received the required documentation in a timely

manner**. . . . Failure to return the required documentation to [Aetna] in a timely manner may

result in the delay or denial of your leave."  (emphasis in original).  HMA's "Certification of

Health Care Provider" form includes an October 11 due date and contains the following language

in small print: "It is the associate's responsibility to ensure all documentation is complete fully

and returned to AETNA within 21 calendar days.  Do not assume that your healthcare provider

will return these documents by the due date."

On September 18, 2006, Denson received a written warning for receiving a total of six

attendance points.  On the next day, September 19, 2006, Denson felt ill and clocked out more

than two hours early.  Before leaving HMA, Denson spoke with Jerry White, a team manager,

---

[1]Aetna was formerly "Broadspire Integrated Disability Management."

about her health, and he referred her to Associate Relations to obtain an FMLA packet.  She

picket up the FMLA packet.  Because the office of her doctor, Hilmon Holley, was closed at the

time she left work, she waited until September 20, 2006 to see Dr. Holley.  Dr. Holley diagnosed

Denson with chronic bronchitis and a sinus infection and certified that she was unable to work

from the time that she left work on September 19 until September 25, 2006, when Dr. Holley

released her to return to work.

On September 20, 2006, Denson contacted Aetna requesting FMLA leave and spoke with

leave coordinator Jason Bedell.  At the time that she made this request, Denson had completed

more than twelve months of service with HMA and she had worked for HMA for more than

1,250 hours during the preceding twelve-month period.  Bedell instructed her that she must have

supporting medical documentation for her illness within twenty-one days of her request or by

October 11, 2006.  He sent Denson a letter dated September 28, 2006,  reminding her that the

completed health provider form would be "due by the close of business on 10/11/2006" and

stating as follows: "It is your responsibility to ensure that all appropriate documentation is

completed in full and returned to [Aetna].  Honda requires all associates to meet notification and

documentation requirements.  Failure to do so may result in the delay or denial of your request."

Denson understood that she was responsible for ensuring that the documentation

supporting her request was submitted on time, and that she could not assume that her healthcare

provider would meet the deadline.  She physically took the medical certification to Dr. Holley's

office for Dr. Holley to send in and she filled in the first two sections of that document, including

the due date of October 11.  Aetna received Denson's initial medical certification on October 6,

2006; this certification included Dr. Holley's medical certification marking Denson's "Absence

Plus Treatment" from September 19 until September 25, 2006 and showing treatment of prescription medicine.  However, the medical certification was incomplete, because it left blank the request for medical facts supporting the certification, and further, it did not specify the exact date(s) of treatment, stating "as above."  Bedell called Denson about the incomplete submission and left her voicemails on October 9, 2006; October 11, 2006; and October 12, 2006.

According to Aetna's records and Bedell's testimony,  Denson returned Bedell's calls on October 12, and he gave her an extension of five working days to get the medical certification completed and submitted to Aetna, making the paperwork due October 19, 2006.  Denson never received any document in writing advising her of the five day extension or the October 19, 2006 deadline.  Denson does not recall whether Bedell called her or whether she called him, and she does not recall the date that the phone conversation took place.  Although she recalls Bedell giving her an extension, she does not specifically recall the date the extension ended.[2]  She does

---

[2] Denson's deposition testimony is internally inconsistent.  At the beginning of the deposition testimony, in speaking of the extension of time from Bedell, she stated: "I don't remember what – how many days he said. . . . . I don't recall what he extended it to."  Later in the deposition, the Defendant's attorney asked her the following question: "It looks like on October 9[th] of '06, Bedell talked to you and advised you that you would be given a five business day extension to get the paperwork in?  Do you recall that?"  Denson replied, "Yes."  At the end of the deposition, the following exchange occurred between Defendant's attorney and Denson:

    Q.  Now, Ms. Denson, you're saying you can't remember Mr. Bedell specifically telling October
           19; right?
    A.  Right.
    Q.  Well, surely you remember he gave you the five-day extension.  He's got that clearly marked in
           his notes.  You do remember him saying five-day extension, don't you?
    A.  Yeah.  I remember him saying five day.

   In her affidavit filed in opposition to the motion for summary judgment, Denson partially explains this discrepancy by saying that later in the deposition, she and the attorney were looking at the records of Bedell/ Aetna as she testified.  She meant to be confirming that she had talked to Bedell and that Bedell had given her an extension and further, acknowledging that Bedell's *records reflected* that he had given her a five business day extension until October 19. However, she claims in that affidavit that she never intended to testify that she remembered the length of the extension or the exact date the extension expired.  She explains her statement at the end of the deposition, "I remember him saying five day" as a mistake: "At that time I just had 5 days in my mind for some reason, and I suppose I was just tired.  I apologize for this, but I had said I did not know several times earlier."  HMA moved to strike the affidavit, and this court denied HMA's motion.

remember talking with Bedell over the phone and recalls that Bedell told her that everything was proper and in order about her paperwork, but that he needed the doctor to supplement the medical certification to show Denson's actual condition and diagnosis and to include the date she was actually at the doctor's office.  According to Denson, Bedell told her that he would give her an extension to obtain the supplemental information and that all she needed to do was to telephone the doctor's office and ask the office to send the supplemental information to Bedell by fax. She does not disagree that Bedell gave her an extension of five working days that ended on October 17, 2006, but simply states that she does not recall the date of the call in which Bedell gave the extension, the length of the extension, or its deadline.

Denson repeated Bedell's directions back to him about only needing to telephone the doctor, and Bedell confirmed this information.  After hanging up from talking with Bedell, Denson immediately called Dr. Holley's office, explained the supplemental information needed, and requested that Dr. Holley fax that information to Bedell at Aetna.  Dr. Holley's office assured her that the information would be faxed.  Denson did not advise Dr. Holley's office of any deadline to act.  She did not follow up with Dr. Holley's office to ensure that the fax was actually sent until after October 19, 2006.

However, Dr. Holley's office did not fax the requested information to Bedell by the October 19, 2006 date.  Aetna allowed a grace period in the event that Denson or her doctor had mailed the certification on October 19.  Because it had not received the information needed to complete the medical certification paperwork, Aetna denied Denson's request for FMLA leave on October 24, 2006.  On Wednesday, October 25, 2006, Bedell sent Denson a letter notifying her that Aetna had denied her 2006 request for FMLA leave, "because [Denson] submitted

6

invalid supporting documentation." The letter further stated in bold letters, **"If you need further explanation, or have reason to believe your request should qualify for a leave of absence, you must contact Aetna within ten (10) working days of the date of this letter**." The record does not reflect when Denson received this letter.

Denson claims that on Monday, October 30, 2006 she first received notification that her request for FMLA leave had been denied when her manager, Mickey Travis, so advised her. On October 31, 2006, the next day, Denson went to Dr. Holley's office, confirmed that the office had not faxed the supplemental information to Bedell, ensured that the medical certification information was completed, and stayed at the office until after office personnel faxed it to Aetna. Denson obtained a copy of the completed certification and took it to HMA personnel. Aetna received the completed medical certification on October 31, 2006, twelve days after the "deadline" of October 19, 2006, but it had already closed her file. Later that day, Denson called Bedell at Aetna to advise him of the fax. According to Denson, Bedell told her that Aena had denied her leave request and that the information faxed was one day late. Bedell reviewed the information received on October 31, 2006, and acknowledged that had it been received by the October 19, 2006 deadline, it would have been acceptable.

After speaking with Bedell, Denson also spoke with HMA personnel to try to change the decision disallowing her FMLA leave. Neither HMA nor Aetna changed the decision disallowing her FMLA leave. Because her request for FMLA leave covering September 19-24 was denied and because neither HMA nor Aetna would reconsider the denial of her request in light of the information faxed on October 31, Denson received four total attendance points for that absence, resulting in a point total of ten points after September 24, 2006.

7

Denson received three more attendance points after her FMLA leave was denied, and Denson does not dispute her entitlement to those three points; she only disputes her entitlement to the four points that she accrued during the period in September 2006 for which she requested FMLA leave.   She does not dispute that she received the appropriate warnings about her attendance point totals, including the "Level 2 Counseling FINAL WARNING" dated November 9, 2006 advising her that she had received a total of eleven active points.  Although Denson received this warning, Denson did not sign the discussion form regarding this warning because she did not agree with the point total in light of the disputed four points in September.

Denson received her last two HMA attendance points on February 28, 2007, bringing her point total to thirteen points and above the attendance policy's termination level of twelve points. Before recommending Denson's termination,  Jackie Jones of HMA reviewed Denson's attendance record and learned that she had applied for and not had received FMLA leave for her absences from September 19 through September 24, 2006, because she had not timely submitted a medical certification.  Jones, therefore, requested from Bedell a copy of the doctor's certification for Denson's September 2006 FMLA leave request.  Bedell faxed to Jones the two medical certifications from October 2006 and explained to him that Denson did not submit a completed medical certification by the final extension date of October 19, 2006.  Jones confirmed that the first medical certification was incomplete, and that the second medical certification was submitted on October 31, 2006, well after the October 19, 2006 deadline. Accordingly, Jones recommended that Denson be terminated.  He testified that he based this decision on Denson's accruing twelve or more attendance points and violating HMA's attendance policy, and did not consider the fact that Denson had unsuccessfully sought FMLA

leave.  Jones has recommended termination of other HMA associates who had more than twelve

attendance points and who had not sought FMLA leave to cover those absences.  Because HMA

took the position that Denson had accrued twelve or more attendance points in violation of

HMA's attendance policy, HMA terminated her employment effective March 7, 2007.  At no

time during the termination meeting did anyone from HMA tell Denson that she was being

terminated because she had requested FMLA leave.

The record includes no evidence of other HMA employees who received approval for

FMLA after submitting required documentation eleven or more days late.  Denson identified

Alan Stovall as an HMA employee who untimely submitted required documentation.  The record

reflects that Alan Stovall submitted his initial medical certification one day past the original

certification deadline; however, he notified HMA and Aetna of a problem obtaining the

certification from his physician on the date of the deadline but before it expired.  Stovall's

request for FMLA leave was approved.

## II.  STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases where no genuine issues of

material fact are present.  *See* Fed. R. Civ. P. 56.  A court must determine two things: (1) whether

any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to

judgment as a matter of law.  *Id*.

The moving party "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The movant can meet this burden by offering

evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence

fails to meet some element of its case on which it bears the ultimate burden of proof.  *Celotex*,

477 U.S. at 322-23.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving

party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'"  *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).  The responding party does not need

to present evidence in a form admissible at trial; "however, he may not merely rest on [his]

pleadings."  *Id*.

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed

and all justifiable inferences are to be drawn in [its] favor."  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986).  "The nonmovant need not be given the benefit of every inference but only

of every reasonable inference."  *Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1282

(11th Cir. 1999).  After both parties have addressed the motion for summary judgment, the court

must grant the motion if no genuine issues of material fact exist and the moving party is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56.  However, the nonmovant can defeat

summary judgment by showing either a genuine issue of material fact or that the movant is not

entitled to judgment as a matter of law._____

### III. DISCUSSION

Denson's Complaint asserts two claims: (1) that HMA improperly denied Denson's

request for FMLA leave in September 2006 despite her entitlement to it; and (2) that HMA retaliated against her for requesting FMLA leave in September 2006 by subsequently terminating her employment.

### A.  Interference with Plaintiff's Right to  FMLA Leave

Denson's Complaint alleges that HMA improperly denied Denson's request for FMLA leave in September 2006 despite her entitlement to it.  The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided . . . ."  29 U.S.C. § 2615(a)(1).  The parties do not dispute that Denson was an "eligible employee" within the meaning of the FMLA and HMA's FMLA policy. "Among the substantive rights granted by the FMLA to eligible employees are the right to '12 workweeks of leave during any 12-month period . . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee,' 29 U.S.C. § 2612(a)(1), and the right following leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position, 29 U.S.C. § 2614(a)(1)."  *Drago v. Jenne*, 453 F.3d 1301, 1305-6 (11th Cir. 2006) (quoting *Strickland v.  Water Works & Sewer Bd. of Birmingham*, 239 F. 3d 1199, 1206 (11th Cir. 2001)). To establish a claim for wrongful denial of or interference with FMLA leave rights, "a plaintiff must demonstrate that he was entitled, under the FMLA, to a benefit that he was denied."  *Id.* at 1306.  A plaintiff does not need to demonstrate "that the employer intended to deny the right; the employer's motives are irrelevant."  *Strickland v. Water Works & Sewer Bd of the City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).

In the instant case, Denson claims that she was entitled to FMLA leave in September

2006, and that HMA interfered with that right by wrongfully denying FMLA leave.  HMA acknowledges that Denson would have been entitled to FMLA leave in September 2006 if she had submitted a completed medical certification in a timely manner.  However, HMA argues that because the completed medical certification was untimely submitted, its denial of FMLA leave was proper and did not constitute a violation of the FMLA.

The FMLA provides that an employer may require that FMLA leave requested under 29 U.S.C. § 2612(a)(1)(D), involving a serious health condition, "be supported by a certification issued by the health care provider of the eligible employee" and that the employee "provide, in a timely manner, a copy of such certification to the employer."  29 U.S.C. § 2613(a).  "Failure to meet the certification requirements renders the employee's absences unprotected by the FMLA." *Baldwin-Love v. Electronic Data Sys. Corp.*, 307 F. Supp. 2d 1222, 1229 (M.D. Ala. 2004) (citing *Cash v. Smith*, 231 F.3d 1301, 1307 (11 th Cir. 2000)).  When the leave is not foreseeable, "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request) . . . ."  29 C.F.R. § 825.305(b).

HMA's requested time frame as stated in the employee handbook was twenty-one days, longer than the minimum required.  (doc. 22, Tab. A, Ex. 2, at 24).  However, an exception to submitting the certification within the employer time frame occurs when "it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b).  A medical certification is "sufficient if it states: (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the

condition; . . . (4) . . . (B) for purposes of leave under section 2612(a)(1)(D) of this title, a statement that the employee is unable to perform the functions of the position of the employee . . . ." 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306[3].  "The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency."  29 C.F.R. § 825.305(d).

In the instant case, Denson provided a medical certification well within the required twenty-one days, but it was incomplete.  Because, for example, Dr. Holley did not respond to the question asking for "medical facts which support your certification," the certification did not include the required "appropriate medical facts within the knowledge of the health care provider regarding the condition," and Bedell correctly noted its insufficiency.  As the Department of Labor regulations require, Bedell advised Denson of the deficiency and provided her with an opportunity to cure it.

The testimonies of Denson and Bedell somewhat predictably diverge at the point Bedell advised her of the deficiency.  Bedell testified that on October 12, 2006, he gave Denson an extension of five-business days to cure the deficiency, establishing a new deadline of October 19, 2006 to submit a completed medical certification form. Aetna records support his testimony. Denson testified that she cannot recall the exact date Bedell communicated the extension, the length of the extension, or the date the extension expired.  The court notes that Denson's testimony regarding her lack of recollection does not render Bedell's testimony disputed, creating

---

[3]  "Certification is sufficient if it states the date on which the serious health condition commenced, the probable duration of the condition, the appropriate medical facts within the knowledge of the health care provider regarding the condition, and a statement that the employee is unable to perform the functions of the position of the employee." *Parris v. Miami Herald Pub. Co.*, 216 F. 3d 1298, 1302 n.2 (11th Cir. 2000) (citing 29 U.S.C. § 2613(a)-(b)).

a genuine issue of material fact.  Stating that she does not remember the dates is different from stating that his dates are incorrect.

However, other evidence submitted does create genuine issues of material fact about HMA's deadline to cure.  For example, a dispute exist as to whether Bedell told her that the completed medical certification submitted on October 31 was only one day late and, thus, contradicted his testimony about the October 19 deadline.  Further, a dispute exists as to whether Bedell's letter dated October 25, 2006, advising her of the denial of her FMLA benefits,  gave her a second extension of ten working days from the letter's date.  Although that letter advised Denson that her request for FMLA leave had been disapproved, it further stated: **"**If you need further explanation, or have reason to believe your request should qualify for a leave of absence, you must contact Aetna within ten (10) working days of the date of this letter."  This language arguably contradicts Bedell's testimony that the October 19 deadline was absolute and final, and arguably provided Denson with an additional ten days from its date, October 25, 2006, to submit the completed doctor certification form supporting her leave request.  If the letter does supply that ten-day extension, Denson met the deadline when she provided the completed medical certification on October 31, 2006.   Because HMA focuses on the submission past the deadline as the reason FMLA leave was properly denied, the court finds that this conflicting evidence about the deadline goes directly to material issues and defeats HMA's motion for summary judgment on the FMLA interference claim.

HMA argues that even if Aetna improperly denied Denson's claim, HMA did not participate in the decision to deny Denson's FMLA claim, and that Denson cannot attribute the actions of Aetna and its employee, Bedell, to HMA.  The court disagrees.  As Denson's

14

employer, HMA was responsible for providing FMLA leave to its eligible employees and was responsible for processing and make decisions upon employee FMLA leave requests.  It chose to delegate those duties to a third party.  However, HMA has provided the court with no authority supporting its position that the delegation of those duties to a third party cuts off its liability to its employee, Denson, when that third party improperly carried out those duties.  Accordingly, this court will not hold as a matter of law that HMA's delegation of its duties to a third party prevents it from being held liable for a claim of FMLA Interference.

The court will DENY HMA's motion for summary judgment on the FMLA interference claim.

### B.  FMLA Retaliation

Denson also alleges that HMA's termination of her employment represents  retaliation against her for attempting to take FMLA leave.  Denson's brief in opposition to the motion for summary judgment allots a scant two pages to argument on the termination claim.  In her argument, she appears to confuse HMA's act of denying her FMLA leave with retaliation, jumping to the conclusion that if Denson's request for FMLA leave was wrongfully denied, then HMA's termination of Denson based on points accumulated during the leave must represent retaliation.[4]  However, that conclusion ignores the distinction between an FMLA interference claim and an FMLA retaliation claim, as well as the crucial element of employer intent.

The Eleventh Circuit has explained that distinction as follows:

---

[4]As noted previously, the court will deny the motion for summary judgment on the FMLA interference claim, and Denson may ultimately be able to convince a jury that her request for FMLA leave was valid.  If she ultimately prevails, proving that her request for leave was due to be granted and that she wrongly received four attendance points, that result may mean her termination was improper.  However, a wrong termination decision is not the same as a retaliatory one.

> To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.  *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right.  *King*, 166 F.3d at 891.  In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his *employer's actions "were motivated by an impermissible retaliatory or discriminatory animus."  Id.*

*Strickland*, 239 F.3d at 1206 (emphasis added).

Denson provides no direct evidence of the employer's intent to retaliate.  Accordingly, the court applies the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1972).  *Strickland*, 239 F.3d at 1207 (applying the McDonnell Douglas framework "in the absence of direct evidence of the employer's intent").  To establish a *prima facie* case of retaliation in the absence of direct evidence of employer's intent to retaliate, a employee must demonstrate that

> (1) he engaged in a statutorily protected activity;
> (2) he suffered an adverse employment decision; and
> (3) the decision was causally related to the protected activity.

*Id.* (citing *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000)). Although Denson has provided evidence that she applied for FMLA leave and that HMA terminated her employment, she has provided no evidence demonstrating the third element, the causal connection

The evidence of records demonstrates that HMA action in terminating Denson

16

was consistent with its attendance policy. Denson does not dispute that she was subject to termination if she accumulated twelve or more attendance points.  She understood that if her September 2006 absences were not covered as FMLA leave, she would be assessed points.  She further acknowledged that if her September 2006 absences were not covered as FMLA leave, she had accumulated twelve or more points as of her termination date.   Denson does not dispute that her attendance record at termination showed thirteen attendance points, but simply says that four of those points should not have been applied.  She disputes the four points accumulated during the period she applied for FMLA leave in  September 2006, because she claims that Aetna was wrong in deeming her submission of the medical certification to be untimely.

Yet, no evidence on the record demonstrates that Jackie Jones, the person who recommended that Denson be terminated, had information that the completed medical certification was in fact timely.  Jones testified that Denson's attendance reflected that Denson's request for leave was denied because of untimely submission of the medical certification.  Jones requested and received from Aetna copies of the two medical certifications submitted for Denson.  He saw that the first lacked medical facts/diagnosis and dates of treatment and that the second completed one was submitted after the October 19, 2006 deadline.  Given that information, he found that Denson's attendance point total was correct and that she had violated HMA's attendance policy. Jones's testimony was that he recommended Denson's termination because Denson violated the attendance policy and not because Denson had unsuccessfully sought FMLA leave.

17

Further, the mere fact that Denson's termination occurred a little over five months after her request for FMLA leave does not provide a causal connection. *See, e.g., Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (finding that temporal proximity of three and one-half month period between plaintiff's communication of a need to take time off and her termination was insufficient to create a jury issue on causation). Based on the evidence before the court on summary judgment, the court finds that Denson has not met her *prima facie* case on the FMLA retaliation claim.

Assuming *arguendo* the Denson has met her *prima facie* case, HMA must articulate a legitimate, non-discriminatory reason for the termination and rebut the presumption of discrimination. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981). It has done so, offering evidence that the reason for the termination was Denson's violation of HMA's attendance policy by accruing twelve or more attendance points. Accordingly, the ultimate burden shifts back to the plaintiff to present evidence that the reason offered is not the true reason but is a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993). Although Denson's brief includes the conclusory statement that "she has offered sufficient substantial legal evidence of pretext to withstand HMA's Motion for Summary Judgment," she fails to specify what that evidence might be, and the court has found none.

As noted above, HMA presented evidence of legitimate reasons for its termination action based upon Denson's attendance record and not based upon

retaliation for her request for FMLA leave.  In fact, Denson had successfully taken FMLA leave in the past, resulting in no retaliatory action.  To support her claim of pretext, Denson has identified no associate with at least thirteen attendance points who did not request FMLA leave and whom HMA did not terminate.  Jones testified that he has recommended the termination of other HMA associates whose attendance occurrences reached or exceeded twelve points and who had not otherwise sought FMLA leave.   In her deposition testimony, Denson did identify associate Alan Stovall as a possible comparator; however, she did not pursue that comparison in her brief. Having examined the evidence of record, the court finds that Denson has failed as a matter of law to meet her burden of demonstrating pretext.

In summary, the court finds that Denson has failed as a matter of law to establish a *prima facie* case of FMLA retaliation and, assuming *arguendo* that she could establish her *prima facie* case on that theory, she nevertheless fails to meet her burden of demonstrating pretext.  Accordingly, her claim for FMLA retaliation must fail as a matter of law, and the court will enter judgment on that claim.  Therefore, the court will GRANT HMA's motion for summary judgment on the FMLA retaliation claim.

## IV.  CONCLUSION

For the reasons stated, the court will DENY HMA's motion for summary judgment on the FMLA interference claim and will GRANT HMA's motion for summary judgment on the FMLA retaliation claim.

Dated this 27th day of October, 2008.

_____

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE